## A. G. EGBERT v. P. L. KIMBERLY ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF MERCER COUNTY.

Argued October 13, 1891—Decided January 4, 1892.

(*a*) Two members of a limited partnership, organized under the act of June 2, 1874, P. L. 271, granted to the association the coal under certain lands, with mining rights, etc., reserving certain royalties. The grantors assigned the grant to the plaintiff, who brought suit for the royalties against the members of the company as general partners:

1. The assignors being members of a company who contracted, inter sese, in their articles of association, that the liability of the members should be limited to the stock subscribed, neither the assignors, nor the plaintiff claiming under them, could be heard to allege that the association was defectively organized, and the liability general.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 276 October Term 1891, Sup. Ct.; court below, No. 196 January Term 1889, C. P.

On December 26, 1890, Albert G. Egbert brought assumpsit against P. L. Kimberly, S. B. Griffith and W. H. Griffith, and seven others, "partners under the name and style of L. M. Ormsby & Co., Limited." Issue.

On May 11, 1891, a trial by jury was waived, and the cause submitted to the decision of the court, under the act of April 22, 1874, P. L. 109.

After hearing, the court, Mehard, P. J., on July 1, 1891, filed a decision finding, in substance, the following facts:

On December 30, 1881, Albert G. Egbert, the plaintiff, en-

tered into a written contract with S. B. Griffith and W. H. Griffith, two of the defendants, for the sale and conveyance to the latter of a number of tracts of coal land and leaseholds for mining purposes, in consideration of eighty thousand dollars, payable six thousand dollars in hand and the balance in ten annual instalments, with a reservation to the vendor, his heirs and assigns, " of a rent or royalty of ten cents per ton of all coal mined or removed from the land," a minimum quantity of coal to be mined, producing not less than six thousand dollars rent or royalty annually. It was provided, further, that time was to be of the essence of the contract, and if the payments were not made as provided the contract should be void ; " that second parties have the right to lease or let the coal or other minerals under any portion of said land, to such person or persons, and in such parts or portions and on such terms as they may deem best for the interest of both parties ; and first party shall receive his rent or royalty as hereinbefore provided, and any additional royalty arising to second parties from such sub-letting shall be applied to arrears of payments due on this contract to first party, should there be such arrears, and the forfeiture clause shall not prejudice the rights of any lessees of coal privileges."

By articles of association or statement, duly recorded on November 1, 1882, P. L. Kimberly, S. B. Griffith, W. H. Griffith and others, the defendants, formed a limited partnership as the Egbert Coal Co., Limited, under the act of June 2, 1874, P. L. 271. The statement recorded set out the full surnames of the members, but as to the Christian, or Christian and middle names, only the initial letters were given, save in one instance where the name of a member was spelled out in full. It was provided in the statement that the capital stock was " payable as called for by the managers." No special " subscription-list book " was kept by the company, but an accurate account of the subscriptions of the members, and of the payments made from time to time by each, was kept in the company's journal and ledger.

By indenture, dated January 31, 1883, exhibit A, S. B. Griffith and W. H. Griffith granted to the Egbert Coal Co., Limited, all the coal under certain of the same tracts of land sold by A. G. Egbert by the contract of December 30, 1881, with certain mining rights and privileges ; the grantees covenanting to pay two thousand two hundred and fifty dollars semi-annually,

and in addition a certain royalty reserved.   In February, 1883, the name of the company was changed to L. Ormsby & Co., Limited; and, on December 2, 1884, by indenture of that date, exhibit B, the semi-annual payments and the rent or royalty were reduced in amount, to be effective from the time of the first indenture.   By a third indenture, dated February 27, 1885, exhibit C, S. B. Griffith and W. H. Griffith granted to L. Ormsby & Co., Limited, all the coal under certain other portions of the same tract of land, at a certain royalty, not less than five thousand tons to be mined per annum.

On November 18, 1885, an agreement was executed, exhibit E, between S. B. Griffith and W. H. Griffith and A. G. Egbert, reciting the articles of sale dated December 30, 1881; that the said S. B. Griffith and W. H. Griffith had "leased to sundry persons the right to mine for coal on certain portions of the said land, reserving certain minimum royalties;" that they had failed to make certain payments due on said articles, and that said Egbert had brought suit for the same.   The agreement then settled all matters between the parties growing out of the said articles, in the following manner: said S. B. Griffith and W. H. Griffith released and quit-claimed to said Egbert, all the several tracts, parcels of land and leasehold estates described in said articles, and surrendered possession thereof, "subject only to the aforesaid leases of the right to mine for coal;" and assigned and transferred to said Egbert "all leases which they have made of the right to mine coal on the said lands or any part thereof as aforesaid, and all rents and royalties due from the lessees on account of coal mined or to be mined under the same," and covenanted that they had not received from said lessees, or any or either of them, any sums of money on account of such rents or royalties, except such sums as they had theretofore accounted for with the said Egbert, therein specified; in consideration whereof, the said Egbert released said S. B. Griffith and W. H. Griffith from their covenants in the said articles.

The data for a computation of the amount due under the instruments A, B, and C, were found, but the exact ascertainment thereof became unnecessary.

So finding, the conclusions of law were as follows:

The plaintiff's claim in this action is based on instruments A, B and C, executed by and between Samuel B. Griffith and William H. Griffith, of the first part, and the Egbert Coal Co., Limited, and the same company under its new name of L. M. Ormsby & Co., Limited, of the second part. The evidence shows that the second party owes a large amount under the stipulations of those instruments. The plaintiff does not seek a judgment against the second party as a limited partnership, but has brought this suit against the members of said association, to fasten liability for his claim upon them individually. The main questions for consideration are, first, whether the privileges and immunities of a limited partnership, as authorized by the act of June 2, 1874, P. L. 271, and its supplements, were secured generally to the members of the Egbert Coal Co., Limited, now L. M. Ormsby & Co., Limited, under and by virtue of their recorded statement; and if not, then, second, whether the articles of association of said company are sufficient to protect the members from individual liability for the claim in suit.

—Upon the provisions of § 1, act of June 2, 1874, P. L. 271, requiring that the " statement " of a limited partnership shall " set forth the full names of such persons," citing : Bratton v. Seymour, 4 W. 329 ; Rex v. Newman, 1 Ld. Raym. 562 ; Woods v. Reynolds, 7 W. & S. 406 ; Seidel v. Bauer, 3 Penny. 448 ; Pears v. Barnes, 1 Cent. R. 569; Lauder v. Logan, 123 Pa. 34 ; upon the provision of the same section requiring that the statement shall show " when and how " the capital stock shall be paid : Hill v. Stetler, 127 Pa. 145 ; and upon the provision of § 2, requiring a subscription-list book to be kept: Masters v. Lauder, 131 Pa. 195 ; Morawetz on Corp., 2d ed., 31 ; Charles River Bridge v. Warren Bridge, 7 Pick. 344, 371, the decision proceeded :

Inasmuch, then, as the statement of defendants' association did not so fix the time of payment of the capital stock, but left that matter to the discretion of the managers, it failed to fulfil one of the conditions precedent to a perfect organization, with a right to the protection afforded thereby, under the act of 1874.

The remaining question is, whether the articles of association of defendants' company are sufficient to protect them from individual liability for the claim in suit.

Decision of Court below.

The privileges given to associations organized under the act of 1874, do not rest on contract. They are a gift from the state on its own terms. An agreement between such an association and those dealing with it, that the liability of the former shall be limited to its capital stock, does not enter into the basis of protection from individual liability. The members get such protection by complying with the conditions prescribed. The state so protects them by virtue of her sovereign power. That is why a strict, or at least a substantial compliance with the conditions is necessary to obtain the benefits of the act: Lauder v. Logan, 123 Pa. 40.

But, [the defendants in this case contracted inter sese in their articles of association, that the liability of their company should be limited to the stock subscribed.] [3] To that end those articles were made and recorded. The defendants were competent to make such a contract, and when made, it bound all parties by its terms: Andrews v. Schott, 10 Pa. 55.

The stipulation for such a limited liability would necessarily enter into every transaction which the individual members thereafter had with the association. Hence, when Samuel B. Griffith and William H. Griffith, two of the parties to said articles, made with defendants' company the instrument on which plaintiff's claim is based, they did so subject to their existing agreement that the liability of their grantees under those instruments, should be limited to the capital stock of the company. That being true, they could not hold the members individually liable for the rents or royalties accruing under those instruments, even though the latter made a fatal misstep in their attempt to form a limited partnership. A different conclusion would nullify the contract the parties made, and make for them one they never thought of.

[The plaintiff's rights in this action are only those of Samuel B. Griffith and William H. Griffith. He sues on their contract, and must take it in all its parts.] [2] If notice to plaintiff were necessary of the contract made by his assignors, that the members of L. M. Ormsby & Co., Limited, should not be held individually for the covenants in instruments A and C, he had it in the writing of assignment whereby he acquired title to this claim, in connection with defendants' recorded statement. But without such notice, the plaintiff was bound by the contract of his assignors.

Opinion of the Court.

[The original articles between the plaintiff and Samuel B. Griffith, William H. Griffith and Samuel F. Thompson, exhibit D, do not enter into this case save as a part of its history. The plaintiff does not claim by virtue of the covenants contained in it; nor could he, for they have been canceled; see exhibit E. The plaintiff's rights do not go beyond the assignment to him from Samuel B. Griffith and William H. Griffith; nor do they rise higher than theirs.] [1]

It is therefore considered, that, while defendants' recorded statement was not sufficient to effect a perfect organization entitled to limited liability as provided by the act of June 2, 1874, yet, as the contract of plaintiff's assignors, it protects the defendants from individual liability for the claim in suit.

And now, July 1, 1891, the prothonotary is directed to file this decision, and forthwith give notice to the parties or their attorneys ; and if no exception be filed thereto within thirty days after service of such notice, he shall enter judgment in favor of defendants and against the plaintiff for costs.

—Exceptions to the decision, filed by the plaintiff and the defendants, having been argued, dismissed, and judgment entered for the defendants, the plaintiff took this appeal, specifying that the court erred: 1–3. In the several conclusions of law.[1 to 3]

*Mr. C. Heydrick* (with him *Mr. Carl I. Heydrick*), for the appellant.

Counsel cited: Lloyd v. Cozens, 2 Ash. 131 ; Bedford v. Terhune, 30 N. Y. 453 (86 Am. Dec. 394) ; Parmenter v. Webber, 8 Taunt. 593 ; Wollaston v. Hakewell, 3 M. & G. 297 (42 E. C. L. R. 161) ; Palmer v. Douglass, 1 Doug. 187 n.; Hannen v. Ewalt, 18 Pa. 9 ; Patten v. Deshon, 1 Gray 325 ; Negley v. Morgan, 46 Pa. 281 ; 2 Platt on Leases, 421 ; Pingrey v. Watkins, 15 Vt. 479.

*Mr. S. W. Dana* and *Mr. B. McGoffin* (with them *Mr. S. Griffith* and *Mr. S. H. Miller*), for the appellees.

Counsel cited: Bement v. Brick Machine Co., 12 Phila. 494 ; Pittsb. etc. R. Co. v. Byers, 32 Pa. 22 ; Franklin S. Bank v. Bridges, 20 W. N. 43.

PER CURIAM:

We think the learned judge below was correct in holding that

" the plaintiff's rights in this action are only those of Samuel B. Griffith and William H. Griffith.   He sues on their contract, and must take it in all its parts."   This is the key to the whole case.   The plaintiff's rights do not go beyond the assignment to him from the Griffiths, nor can they rise higher than theirs. If we concede that the company was defectively organized, neither the Griffiths, nor any one claiming under or through them, could take advantage of such defect, for the reason that the Griffiths were members of said company, and contracted inter sese in their articles of association, that the liability of their company should be limited to the stock subscribed.

Judgment affirmed.